[No. 19509. Department One. December 4, 1925.]

ZACK NYSTROM, *as Administrator of the Estate of John Nystrom, Deceased, Appellant,* v. E. L. THORNTON *et al., Respondents.*[1]

DEEDS (21-1, 63)—VALIDITY—MENTAL CAPACITY OF GRANTOR—EVIDENCE—SUFFICIENCY. A deed of lands and timber will be set aside for want of legal capacity of the grantor, where it appears that he had been committed to the state insane asylum as incurably insane, was out on parol when the deed was executed, and shortly before had an acute return of his malady, and died therefrom shortly afterwards.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered March 2, 1925, dismissing an action to annul conveyances on an exchange of properties, after a trial to the court on the merits. Reversed.

*Bates & Peterson,* for appellant.

*Troy & Yantis,* for respondents.

FULLERTON, J.—On and prior to June 9, 1923, one John Nystrom was the owner of a twenty-acre tract of land, situated in Thurston county. On the date given, he deeded the property to the respondents Thornton. As a consideration for the deed, and for the further consideration of four hundred dollars, then paid them, the respondents sold and assigned to Nystrom "all of the merchantable tie timber" on the

[1]Reported in 241 Pac. 296.

tract conveyed, and all of the timber of like kind on a forty-acre tract adjoining the tract conveyed. There was, however, reserved from the sale thirty-two trees, standing on a described area near a lake which extended across the tract conveyed, and also all trees on both tracts which were three feet six inches or over in diameter, and all timber too small to be cut into ties. The purchaser of the timber was given three years' time in which to remove the timber, and, in the case of unavoidable accident or circumstances preventing its removal within the three years, a reasonable further length of time in which to remove it.

John Nystrom died some two months and fifteen days after the execution of the conveyances, and the present action was thereafter begun by the administrator of his estate to set aside the conveyances and to recover the cash payment made by Nystrom as a part consideration for the contract. The trial resulted in a decree affirming the contract.

There was a sharp conflict in the evidence as to the values of the properties passing by the conveyances. If we are to accept the values as they are given by the respondents and their witnesses, there was no great disparity in value between the properties exchanged. On the other hand, if we accept the values of the appellant's witnesses, the contract amounted in its practical effect to a gift of the land conveyed. Our examination of the evidence leads us to the conclusion that the true value is somewhere between these estimates, but more nearly that of the appellant than it is that of the respondents. The respondents' valuation of the timber is based on the assumption that all of the timber between the sizes enumerated passed by the conveyance, whereas it was distinctly limited in the contract to the "merchantable tie timber." It was based, further, on the assumption that the timber could

be removed under the most favorable circumstances; whereas, it was the testimony of a practical logger that, because of the fact that certain of the timber must be left standing on the premises, the cost of removal would be greatly increased over that of a more normal situation—a situation where all of the timber could be removed. There was a dispute, also, as to the value of the land conveyed, on which, we think, the weight of the evidence is with the appellant.

But there is a more serious issue involved. We think the evidence very conclusively shows that Nystrom was, at that time, because of his mental condition, incapable of contracting. As early as the year 1921, Nystrom began to show active symptoms of paretic dementia. He was then placed in a private sanatorium for observation and treatment, the proprietor of which was a physician specializing in mental diseases. After he had remained there for some months, the physician reached the conclusion that he would not recover his sanity and recommended his commitment to the state insane asylum. He was thereupon committed to that institution by an order of the superior court. He was confined therein until January 19, 1922, when he was paroled to the care of one of his sons, and was out on parole at the time the conveyances here in question were executed. After the parole, his condition seems to have remained stationary for some period of time, but the evidence shows that, shortly before the time of the conveyances, he showed evidences of an acute return of his malady. Shortly before the transaction (the witness testifying says about a week), he offered to give to the witness a tract of land he owned in another part of the county. On his return home after the conveyances had been entered into, he told his daughter-in-law that he was mad at the respondents; that they had taken four hundred

dollars away from him; and that he was compelled to enter into the contracts. A few days later, when at the office of an attorney who held an account due him for collection, he told the attorney that he had made a fortune on a timber deal, referring to the transaction in question, and offered to give the attorney the account. Another witness testified that, shortly after the transaction, Nystrom told him that he had got timber worth twenty thousand dollars for his twenty acres of land. And it will be remembered, as we have hereinbefore recited, that Nystrom died from the effects of his malady shortly after the execution of the conveyances.

We think we need not further discuss the evidence. To our minds, it not only shows that the contract was improvident on the part of Nystrom, but that he was so far incapacitated as to be incapable of understanding its nature. There is no obstacle in the way of a rescission, and no loss will occur to the respondents other than the loss of the benefits of the bargain, and to this we conclude they are not entitled.

The decree of the trial court is reversed, with instructions to enter a decree annulling the conveyances, and awarding to the appellant a judgment for the cash consideration paid.

TOLMAN, C. J., HOLCOMB, ASKREN, and MACKINTOSH, JJ., concur.